UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN TAVARES, | Hon. Joseph H. Rodriguez |
| Plaintiff, | |
| | Civil No. 21-02964 |
| v. | |
| BUILDERS FIRSTSOURCE NORTHEAST GROUP, INC. and JOHN DOES 1-5 and 6-10, | |
| | OPINION |
| Defendants. | |

Defendant ProBuild Company, LLC d/b/a Builders FirstSource ("Defendant") is a supplier of structural building products, value-added components, and services to the professional market for the construction, repair, and remodeling of single-family and multi-family homes. Plaintiff Stephen Tavares ("Plaintiff") was employed by Defendant and claims that during his six-month tenure with the company he was subjected to severe and pervasive harassment because of his race and sex that altered his work environment to become hostile, intimidating, and/or abusive. Presently before the Court is Defendant's motion for summary judgment as to each of Plaintiff's two claims brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 et seq. ("NJLAD"). [Dkt. 30]. For the reasons set forth herein, the Court will grant Defendant's motion.

I.     Background

The Court has derived the following summary of the relevant facts from its review of the materials filed in support of and in opposition to the instant motion. Plaintiff is a multi-racial male of black and white descent who was hired by Defendant on September

1

4, 2019 to work as a Load Builder/Forklift Operator. Plaintiff's Counter Statement of Material Facts ¶¶ 1, 3, 20. Tavares submitted his notice of resignation on March 23, 2020 and his official last day of employment in the position was March 24, 2020. Defendant's Statement of Material Facts ¶¶ 88, 101. Prior to the submission of his notice of resignation, Plaintiff attempted, unsuccessfully, to negotiate a pay raise with Defendant. Def. SOF ¶ 90. Plaintiff told Defendant that it would need to raise his pay or "[he] was leaving to go somewhere else." Def. SOF ¶ 93; Tavares Dep., at 134:19-135:07. According to his deposition testimony, Tavares resigned because he felt that he was not being adequately compensated and he accepted a job that was "much closer." Def. SOF ¶ 97; Tavares Dep., at 148:24-149:02, 149:07-10.

On January 22, 2021 Plaintiff filed a two-count Complaint alleging (1) racial harassment and (2) sexual harassment in violation of the New Jersey Law Against Discrimination ("NJLAD"). Count One of the Complaint, alleging racial harassment, stems from Tavares' contention that BFS "created and perpetuated a racially abusive and harassing environment." Compl. ¶¶ 39-40. Count Two of the Complaint, alleging sexual harassment, stems from Tavares' contention that BFS "created and perpetuated a sexually abusive and harassing environment." Compl. ¶¶ 41-42. Tavares identifies a number of incidents occurring throughout his employ, which he alleges support these claims.

a. **Allegations of Racial Harassment**

i. *The "Thick Skin" Comment*

During his employ, Plaintiff's supervisors were Yard Supervisor John Hood ("Hood") Assistant Manager Anthony Gamblain ("Gamblain"), and Manager Shane

2

Gibson ("Gibson"). Pl. SOF ¶ 5. Plaintiff testified that during his job interview with General Manager Shane Gibson ("Gibson") and Assistant General Manager Anthony Gamblain ("Gamblain"), "[t]he thing that stuck out to [him] was [Gamblain] asking [him] if [he] had thick skin. [Gamblain] [s]aid you needed a thick skin to work there or something. You need to be a hard worker." Tavares Dep. at 37:08-38:01. Tavares stated that did not believe this comment was about his race at first and that he was offended by the comment but because he felt Gibson and Gamblain "were trying to tell [him] that [he] was soft or something." Tavares Dep. at 38:13-21. However, Plaintiff claims that he later came to believe the comment was race related after Hood told him that Gibson and Gamblain made the comment to "a lot of people."

### ii. The "Buffalo Chicken Pizza" Comment

In or about December 2019, Defendant ordered a pizza lunch for employees after finishing inventory. Def. SOF ¶ 37. During the lunch, Plaintiff ate three to four slices of buffalo chicken pizza. Def. SOF ¶ 39. After eating the pizza, Plaintiff went to use the bathroom. Def. SOF ¶ 40. Plaintiff testified that when he walked out of the bathroom, he heard employees laughing followed by silence when he walked in, which led him to believe that he had been the topic of conversation prior to rejoining the lunch group. Def. SOF 42; Tavares Dep. ¶ 43 90:23-91:18. According to Plaintiff, Gamblain exclaimed "You can tell he's black because he ate all of the buffalo chicken pizza!" Pl. SOF ¶ 25. Other employees and members of management were present and laughed at the comment. Pl. SOF ¶ 26. Plaintiff heard laughter and part of the comment but was later informed of the full comment from supervisor John Hood. Pl. SOF ¶ 28.

### iii. The "Fucking Black People" Comment

Plaintiff claims he heard Gamblain scream "fucking black people!" while in the warehouse, apparently in frustration with a black employee. Pl. SOF ¶ 30; Compl. ¶ 23. Plaintiff did not hear any of the conversation that preceded the uttering of the comment. Def. SOF ¶ 59. When the comment was allegedly made, there was a large pile of material in the middle of the warehouse, which served as a median and prevented Plaintiff from seeing the individual who made the comment. Def. SOF ¶¶ 57-58. Plaintiff acknowledged during his deposition that because he was unable to see who made the comment, he "could have misheard who said it[.]" Tavares Dep., at 97:19-98:05.

### iv. The "Black John" Comment

Gamblain began calling John Hood "Black John" on the first date of his employment. Pl. SOF ¶ 159. When Gamblain made the comment "What should we call you? Because we already have another John, and he is white, so we are going to call you Black John[,]" he did so in front of a group of approximately fifteen employees, including Gibson. Pl. SOF ¶ 161. Plaintiff alleges that during the course of his six months of employment with Defendant, he heard Gamblain and other employees refer to Hood as "Black John" on numerous occasions. Pl. SOF ¶ 39-43. Plaintiff specifically asserts that he heard Gamblain call Hood "Black John" ten to fifteen times. Tavares Dep., at 130:10-131:05, 132:16-21. Plaintiff claims that the frequency with which this term was used by Gamblain led him to believe that the behavior was part of the work culture at Defendant. Pl. SOF ¶ 44.

### v. The "Monica" Comment

Plaintiff alleges that in or about late 2019/early 2020, another employee, Eric

4

Fetro ("Fetro") was repeatedly saying "Monica" in the yard to mimic a racial slur, i.e. "my nigga." Pl. SOF ¶ 32. Compl. at ¶ 25. Gamblain personally heard Fetro make the comment several times but never reported the comment to Human Resources or to Gibson. PL SOF ¶¶ 34-35, 37. In his deposition, Plaintiff stated that he did not believe that Fetro was talking to him when he said the word "Monica." Tavares Dep. at 107:07-23. Rather, Plaintiff thought that Fetro was talking to himself out loud. Tavares Dep. at 107:21-23.

### vi. *Alleged Comments as to Black Employees*

Plaintiff alleges that on or about the date of his effective termination, he overheard Gibson stating that he wished he never hired the Plaintiff and that he wished he never hired at least four other employees, all of whom are of black descent. Def. SOF ¶ 108; Compl. ¶ 36. When Gibson stated that he wished he never hired specific black employees, he mentioned all of them by name. Tavares Dep. at 132:2-6. Plaintiff testified that he believed it was a "blatantly racist statement." Tavares Dep. at 136:14-154. However, Plaintiff further testified that this comment was directed at him due to the fact that he attempted to negotiate an increase in his pay (Tavares Dep. at 134:19-136:13) and guessed that the portion of Gibson's comments concerning the other employees was made because "he wasn't happy with their performance" (Tavares Dep. at 138 123-24).

### b. Allegations of Sexual Harassment

#### i. *The "Pregnant Pussy" Comment*

Tavares alleges that in or about November 2019, Plaintiff was talking on the

5

phone to his pregnant fiancée when Gamblain stated to Gibson and another employee that "pregnant pussy is the best." Pl. SOF ¶ 69 . The incident purportedly took place in the management office, where Gibson and Gamblain's desks were located. Tavares Dep. at 72:22-73:04. Plaintiff testified that he did not know what they were talking about prior to him walking up to the door." Tavares Dep. at 81:16-18. However, Plaintiff assumed the comment was "about him" and/or his pregnant fiancée. Tavares Dep. at 78:21-79:19, 83:06-21. Plaintiff testified that he did not find the comment funny because Gamblain was referring to his pregnant fiancée and unborn child. Tavares Dep. 74:23-75:20.

### ii. The "Road Head" Comment

Plaintiff alleges that in or about December 2019 managers Gamblain and Gibson made comments that if they sent certain employees to drive deliveries to New York, that it would be "free road head." Def. SOF ¶ 78; Compl. ¶ 28; Tavares Dep., at 114:03-19, 115:17-25. Plaintiff stated that when he approached the office he was able to overhear the alleged conversation. Tavares Dep. at 115:07-16, 116:13-15. Plaintiff did not hear his name mentioned and the comments were not made to Plaintiff. Tavares Dep. at 119:16-19; 120:13-18. When asked in deposition whether Plaintiff knew if Gamblain and Gibson were talking about him, Plaintiff responded that he could not say.

> Q. But you don't know if they were talking about you at all, do you?
> A. No, I guess I couldn't say that they were necessarily talking about me. I just overheard the comments being made about the delivery and I assumed it was me.
> Q. In fact, they could have been talking about Anthony Vega or Dakota Maroz because those are the individual's names that you actually heard in that conversation, right?
> A. Right, it's still just kind of offensive just hearing the whole situation, but yeah.

Tavares Dep. at 121:7-20.

### *iii.  The Restroom Comment*

Tavares alleges that in or about October 2019, while washing his hands in the restroom, a co-worker stated to Tavares, "[h]urry up, this thing isn't going to hold itself," seemingly referring to his genitals. Def. SOFCompl. ¶ 30; Tavares Dep. at 123:10-23. Tavares did not respond to his coworker. Tavares Dep. at 124:13-16.

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a showing must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).  A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, will fail to preclude the entry of summary judgment. Id.

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Halsey v.*

7

*Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Any such inferences "must flow directly from admissible evidence[,]" because "'an inference based upon [ ] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citing *Anderson*, 477 U.S. at 255)).

Accordingly, the moving party initially has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Again, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)).

> Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. The movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); *accord* Fed. R. Civ. P. 56(c)(2).

8

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Analysis

#### a. Claim for Racial Harassment in Violation of the NJLAD

Plaintiff asserts a claim of racial harassment in violation of the NJLAD under the theory that Defendant "created and perpetuated a racially abusive and harassing environment[.]" Compl. ¶ 40. Section 10:5–12(a) of the NJLAD makes it unlawful for an employer to discriminate against an individual because of that person's race. N.J.S.A. § 10:5–12(a). The Supreme Court of New Jersey has recognized that a hostile work environment claim is a variety of NJLAD discrimination. *Victor v. State*, 203 N.J. 383, 409, 4 A.3d 126, 141 (2010). To succeed on a racial harassment claim premised upon a hostile work environment, a plaintiff must demonstrate that "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 (3d Cir. 2015) (quoting *Victor*, 203 N.J. 383 (internal quotations omitted).

Defendant first argues that Plaintiff cannot establish that the alleged harassing conduct occurred "because of" his race under the first prong. Circumstances can give rise to an actionable hostile work environment claim even where the plaintiff was not the "target" of the offensive or harassing conduct. *Lehmann v. Toys R Us, Inc.*, 132 N.J.

9

587, 611, 626 A.2d 445, 457 (1993) ("we hold that the plaintiff need not personally have been the target of each or any instance of offensive or harassing conduct"); *see also Lin v. Dane Const. Co.*, No. A-1034-13T1, 2014 WL 8131876, at *6 (N.J. Super. Ct. App. Div. Mar. 17, 2015) ("Because plaintiff personally witnessed [the] offensive comments by hearing them, they can cause her to experience a hostile work environment"). Thus, the Court can dispense with any concern that not all of the comments testified to by Plaintiff were directed at him. What is relevant, however, is whether the statements Plaintiff heard or learned about constitute conduct that occurred because of Plaintiff's particular race. *See Cutler v. Dorn*, 196 N.J. 419, 433, 955 A.2d 917, 925 (2008).

    The record does not support Plaintiff's claim that the comment made by his managers about employees needing "thick skin" to work in the yard was attributable to his race. As he conceded in his deposition, Plaintiff felt Gibson and Gamblain "were trying to tell [him] that [he] was soft or something." Tavares Dep. at 38:13-21. The same cannot be said, however, for his co-workers' purported use of the terms "Monica" and "Black John" as well as the "buffalo chicken pizza" remark and the "fucking black people" comment Tavares' allegedly heard after he resigned. The racial connotation of these comments are apparent, and Tavares perceived each of them in some capacity. Gamblain's "buffalo chicken pizza" comment was made about Plaintiff specifically and he was informed about the full comment later by John Hood; the use of the terms "Monica" and "Black John" were made in the presence of Plaintiff; and, the "fucking black people" comment was made within earshot of Plaintiff. The Court therefore proceeds to analyze the facts under the remaining prongs.

    Under the test for evaluating a hostile work environment claim, "the second,

third, and fourth prongs, while separable to some extent, are interdependent." *Ryan v. Twp. of Mount Olive*, No. A-5768-08T1, 2010 WL 3933201, at *5 (N.J. Super. Ct. App. Div. Sept. 24, 2010) (citing *Lehmann*, 132 N.J. at 604. "One cannot inquire whether the alleged conduct was 'severe or pervasive' without knowing how severe or pervasive it must be." *Lehmann*, 132 N.J. at 587. "The answer to that question lies in the other prongs: the conduct must be severe or pervasive enough to make a reasonable [person in that racial group] believe that the conditions of employment are altered and her working environment is hostile." *Id.*

In determining whether conduct is "severe or pervasive," New Jersey courts evaluate "the totality of the relevant circumstances," including: "(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Church, 605 F. App'x at 125* (quoting *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178, 952 (2008) (internal quotations omitted). In performing this analysis, courts consider "the cumulative effect of the various incidents" and evaluate the "harassing conduct itself …, not its effect on the plaintiff." *Id.* (internal quotations omitted). "[O]ffhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir.2005) (internal quotations omitted). Rather, the alleged conduct must be so "extreme [as] to amount to a change in the terms and conditions of employment." *Id.*

Here, Plaintiff has not established that the incidents were severe or pervasive such that a reasonable person would believe that they altered the terms and conditions

of his employment. Plaintiff identified a single comment spoken about him prior to his resignation – the "buffalo chicken pizza" comment – that was made because of his race. While this racially charged remark is insensitive and was uttered by Assistant Manager Gamblain, it was non-threatening and appears more akin to the type of offhand comments that are insufficient to support a hostile work environment claim. As for the sporadic use of racial remarks by employees including "Monica," "Black John" and "fucking black people," Plaintiff cannot show that these were made against him or were sufficiently serious that they could be said to have created a culture that negatively altered the terms of his employment. It is also difficult to see how the purported statement by Gibson that he wished he never hired certain black employees including Plaintiff would advance his hostile work environment claim under the circumstances. That remark was allegedly uttered after Plaintiff had submitted his resignation, and he believed it may have been made because he was trying to negotiate a raise in pay and because the other employees were not performing well.

For these reasons, the Court finds that no reasonably jury could conclude that Plaintiff was subjected to a hostile work environment based on his race, and the Court will grant Defendant summary judgment on that claim.

### b. Claim for Sexual Harassment in Violation of the NJLAD

Tavares asserts a claim for sexual harassment in violation of the NJLAD. "Sexual harassment is a form of sex discrimination that violates" the NJLAD.[1] *Lehmann*, 132

---

[1] "Claims of sexual harassment under the LAD normally fall into two categories: 1) 'quid pro quo,' involving express or implied threats by the employer that the employee will suffer adverse employment consequences if he or she refuses to submit to the employer's sexual demands; or 2) hostile work environment, in which the employer or

12

N.J. at 601. Hostile work environment sexual harassment "occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." *Id*. The conduct at issue "need not be sexual in nature; rather, its defining characteristic is that the harassment occurs because of the victim's sex." *Id*. at 602.

To prove a claim for hostile work environment sexual harassment under the NJLAD, a plaintiff has the burden to demonstrate that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Griffin v. City of E. Orange*, 225 N.J. 400, 413–14, 139 A.3d 16, 24 (2016) (quoting *Lehmann*, 132 N.J. at 603–04 (internal quotations omitted). "When the harassing conduct is sexual or sexist in nature," as "when a plaintiff alleges that [he] has been subjected to sexual touchings or comments," the first element "will automatically be satisfied." *Lehmann*, 132 N.J. at 605. However, a NJLAD plaintiff is also compelled to prove that the harassing conduct, "not its effect on the plaintiff or on the work environment," was "severe or pervasive." *Id.* at 606 (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). To satisfy the third and fourth factors, a NJLAD plaintiff must show that his or "her working conditions were affected by the harassment to the point at which a reasonable [person] would consider the working environment hostile." *Id.* at 610.

As with race-based hostile work environment claims, to determine whether

---

other employees harass an employee because of his or her gender to such an extent that the workplace becomes hostile." *Entrot v. BASF Corp.*, 359 N.J. Super. 162, 171 (App. Div. 2003). Plaintiff's claim falls within the latter category.

13

alleged sexually harassing conduct is severe or pervasive, a court will engage in an "assessment of the totality of the relevant circumstances," including: "(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Church*, 605 F. App'x at 125 (quoting *Godfrey*, 196 N.J. 178) (internal quotations omitted).

Here, Tavares has not adduced evidence to show severe or pervasive conduct that a reasonable person would believe created a hostile work environment. In support of his claim, Plaintiff sets forth three incidents occurring during his employment: (1) that Gamblain said that "pregnant pussy is the best;" (2) the alleged "road head" comment; and (3) that an employee in the restroom told Plaintiff "this thing isn't going to hold itself." Within the parameters set forth by New Jersey courts, the allegations of sexually harassing conduct in this case were not frequent, since Plaintiff alleges only three incidents occurring over the course of at six months.  The conduct was not severe and instead amounts to crude comments, occasional teasing, and jokes of a sexual nature that were not physically threatening. Notably, only one of the comments – the restroom comment – was directed at Plaintiff. Federal courts, to which the New Jersey courts look for guidance in sexual harassment matters (*Lehman* 132 N.J. at 600–01) have generally held that crude comments are not actionable as sexual harassment. *See Bishop v. Inacom, Inc.*, No. CIV. A. 99-664, 1999 WL 1416919, at *6 (D.N.J. Dec. 1, 1999). The Supreme Court has instructed that courts judging hostility should "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775,

788 (1998) (citing *Oncale v. Sundowner Offshore Services, Inc.* 523 U.S. 75, 80 (1998). Even when viewed in a light most favorable to Plaintiff, no reasonable juror could conclude that the three remarks in question constitute the type of severe and pervasive conduct capable of interfering with the conditions of Plaintiff's employment. The Court will therefore grant Defendant summary judgment as to Plaintiff's claim for hostile work environment sexual harassment.[2]

## IV. Conclusion

For the reasons set forth herein, Defendant's motion for summary judgment will be granted.

An appropriate Order shall issue.

Dated: June 29, 2023

s/ Joseph H. Rodriguez<br>
Hon. Joseph H. Rodriguez,<br>
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court concludes that Plaintiff cannot establish a *prima facie* case for his hostile work environment claims, it need not address the parties' arguments concerning Defendant's entitlement to an *Ellerth/Faragher* defense or Plaintiff's demand for punitive damages. *See Aguas v. State*, 220 N.J. 494, 524 (2015) (observing that in hostile work environment actions brought pursuant to the NJLAD in which plaintiffs allege employer vicarious liability, plaintiffs have the initial burden of presenting a *prima facie* hostile work environment claim).

15